## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JORDAN DARRELL ZANTIZ**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 12-1580**

**RONNIE SEAL, et al.**                       **SECTION: "G"(2)**

### ORDER AND REASONS

Plaintiff Jordan Darrell Zantiz ("Zantiz") was formerly a prisoner incarcerated in Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.[1] On July 2, 2012, Zantiz filed the complaint in this matter, asserting claims pursuant to 42 U.S.C. § 1983 against several Rayburn employees.[2] Zantiz seeks relief from an alleged incident where he was beaten while handcuffed.[3] Zantiz also claims that the facility and its employees failed to protect him from the use of force and that he was provided with inadequate medical care for his injuries.[4]

Before the Court is Defendant Robert Tanner's ("Tanner") and Defendant Bruce Forbes's ("Forbes") Motion to Dismiss Based on Qualified Immunity.[5] For the reasons that follow, Defendants' motion is **GRANTED IN PART AND  DENIED IN PART**.

### I. Background

#### A. Factual Background

The plaintiff in this case is Jordan Darrell Zantiz, formerly a prisoner incarcerated at

---

[1]  Rec. Doc. 1 at p. 3. Zantiz was released from prison on October 25, 2013. Rec. Doc. 120 at p. 1.

[2]  *Id.*

[3]  *Id.* at 17.

[4]  *Id.* at 17.

[5]  Rec. Doc. 62.

Rayburn. Defendants are correctional officers and healthcare providers at Rayburn. There is a total of ten defendants: Captain Ronnie Seal, Sergeant EMT Bruce Forbes, Sergeant Heather Warner, Warden Robert Tanner, Sergeant Master Carla Tullos, Lieutenant Wade Rigdon, Captain Lester Mitchell, Major Craig Kennedy, Captain Food Service/Security Frank Cleland, and Sergeant Master Rhonda Distefano.

Zantiz alleges that on December 31, 2011, he was called into the dining hall at Rayburn to speak with Captain Lester Mitchell, regarding an incident between Zanitz and a sergeant at Rayburn.[6] When Zantiz informed Mitchell that he did not know about the incident, Mitchell allegedly responded "that he was going to lock [Zantiz] up pending investigation."[7] According to Zantiz, Captain Ronnie Seal then handcuffed Zantiz behind his back, and "punched [Zantiz] on [his] left ear and twisted the cuffs and grabbed [Zantiz's] shirt collar."[8] Zantiz claims that Mitchell "ignored the situation altogether."[9] Zantiz also contends that Major Craig Kennedy,[10] Captain Frank Cleland,[11] and Sergeant Master Rhonda Distefano[12] witnessed this incident in the dining hall. After handcuffing Zantiz, Seal allegedly began pushing him out of the dining hall while yelling "racial things."[13]

---

[6] Rec. Doc. 1 at p. 17.

[7] *Id.*

[8] *Id.*

[9] *Id.* at pp. 17-18.

[10] Hearing before Magistrate Judge Joseph C. Wilkinson, Jr., Sept. 4, 2012 (hereinafter "*Spears* Hearing"), Tr. at 18:7–20.

[11] *Id.* at 18:21–19:5.

[12] *Id.* at 16:17–21.

[13] Rec. Doc. 1 at p. 18.

Zantiz and Seal left the dining hall and moved toward the yard.[14] Zantiz claims that Seal hit him a second time and repeatedly called him a "dumb nigger."[15] Then, according to Zantiz, Seal "jerked" Zantiz's collar and started yelling "about how he hates smart-ass niggers."[16] Zantiz asserts that following these comments, he was forced to the ground and beaten:

> Lt. Seal forced me to the ground and began kneeing me in the back, and side areas (left) repeatedly. Moments later my legs were crossed and someone began stomping on my back, butt, and leg. When I looked back Lt. Rigon [Defendant Wade Rigdon] was twisting/pulling my feet cross each other, and Lt. Seal continued kicking and stomping me. Lt. Seal then began lifting my arms up and kneed me in the back once again.[17]

Following this alleged beating, Zantiz states that Seal choked him and yelled that "niggers don't run shit around here."[18] According to Zantiz, Seal went on to say that "Klans have been hanging niggers around here for years."[19] Next, Zantiz alleges that "Department officials put a noose around my neck and threatened to hang me if I don't mind my own business."[20]

According to Zantiz, Sergeant Master Carla Tullos[21] and Sergeant Heather Warner[22] witnessed these events, which took place in the yard.

Once Zantiz was secured on his unit, he was visited by Sergeant EMT Bruce Forbes, also

---

[14] *Spears* Hearing, Tr. at 10:22–12:20.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Spears* Hearing, Tr. at 12:21–13:1.

[22] *Id.* at 17:14–18:6.

a defendant, and Seal.[23] Zantiz recounts that Forbes stated that Zantiz probably had a broken rib but commented that "[his] wrist, ankles, back, and everything else would heal up in a few weeks."[24] When Zantiz said that he wanted to see a doctor, Forbes allegedly responded: "No you don't. Your black ass shouldn't have pissed Lt. Seal off. You're a bitch ass crybaby and niggers like you are always crying when they jump on you."[25]

Zantiz alleges that after the events of December 31, 2011, Rayburn officials "conspired" to prevent him from pursuing a complaint.[26] He further avers that "the Department is Bias [sic.] and Partial, egregiously devised to deprive me of all fundamental fairness and an opportunity to seek Justice in holding Lt. Seal, Lt. Rigdon etc. accountable for their crimes against me . . . and even to have them charged and punished."[27]

Defendants deny Plaintiff's alleged version of events. According to Defendants, on December 31, 2011, "[m]inimal force was used to restore discipline"[28] and "plaintiff suffered no physical injury."[29]

### B. Procedural Background

Plaintiff Zantiz, proceeding pro se, filed the complaint in this matter on July 2, 2012,

---

[23] Rec. Doc. 1 at p. 18.

[24] *Id.*

[25] *Id.*

[26] *Id.* at p. 19.

[27] *Id.*

[28] Rec. Doc. 36 at p. 10.

[29] *Id.*

asserting that Defendants violated his constitutional rights.[30] On September 4, 2012, the Magistrate Judge conducted a hearing pursuant to *Spear v. McCotter*,[31] in order to have "the prisoner state with more definiteness the form and substance of his claim" prior to the service of process on the defendants.[32] During the *Spears* hearing, the Magistrate Judge questioned Zantiz and determined that Zantiz's claims against the ten defendants are as follows:

- Captain Ronnie Seal: excessive force

- Lieutenant Wade Rigdon: excessive force

- Sergeant EMT Bruce Forbes: inadequate medical attention

- Sergeant Heather Warner: failure to protect

- Sergeant Master Carla Tullos: failure to protect

- Captain Lester Mitchell: failure to protect

- Major Craig Kennedy: failure to protect

- Captain Food Service/Security Frank Cleland: failure to protect

- Sergeant Master Rhonda Distefano: failure to protect

- Warden Robert Tanner: liability as "overseer of the whole institution" and failure to adequately investigate.[33]

Defendants filed an answer on October 16, 2012, denying the allegations and raising the defense of qualified immunity.[34] On January 1, 2013, Defendants filed a motion for a *Schultea*

---

[30] Rec. Doc. 1.

[31] 766 F.2d 179 (5th Cir. 1985).

[32] *Id.* at 181. A minute entry from the *Spears* hearing is available at Rec. Doc. 30.

[33] *Spears* Hearing, Tr. at 25:3–27:16.

[34] Rec. Doc. 36.

Reply,[35] which Plaintiff provided on February 6.[36] Defendants filed the pending "Motion to Dismiss Defendants Warden Robert Tanner and EMT Bruce Forbes Based on Qualified Immunity" on March 12, 2013.[37] Plaintiff filed a memorandum in opposition on March 21, 2013.[38]

## II. Parties' Arguments

### A. Defendants' Argument in Support

Defendants Tanner and Forbes argue that all claims against them should be dismissed because they are entitled to qualified immunity.[39] Citing the Fifth Circuit's decision in *Floyd v. City of Kenner, La.*,[40] Tanner and Forbes assert that the Court must review Zantiz's allegations under a "heightened pleading standard," which would require "'allegations of fact focusing specially on the conduct of the individual who caused the plaintiff's injury.'"[41] To determine whether qualified immunity bars suit against the defendants, Tanner and Forbes contend that the Supreme Court mandates a two-prong inquiry.[42] First, the court must decide whether the facts alleged "make out a violation of a constitutional right."[43] Second, the court must determine "whether the right at issue

---

[35] Rec. Doc. 49.

[36] Rec. Doc. 56.

[37] Rec. Doc. 62.

[38] Rec. Doc. 64.

[39] Rec. Doc. 62 at p. 1.

[40] 351 F. App'x 890 (5th Cir. 2009).

[41] Rec. Doc. 62 at p. 2 (quoting *Floyd*, 351 F. App'x at 893).

[42] *Id.* at p. 5 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[43] *Id.* (quoting *Peason*, 555 U.S. at 232).

6

was clearly established at the time of defendant's alleged misconduct."[44]

### 1. Defendants' Argument That Warden Robert Tanner Is Entitled to Qualified Immunity

Citing the Supreme Court's decision in *Ashcroft v. Iqbal*, Tanner avers that "[n]o person may be held vicariously liable for acts of subordinates under § 1983."[45] According to Tanner, "the plaintiff makes only allegations that Warden Tanner should be held personally liable for the alleged actions of his subordinates," and thus *Iqbal* precludes Zantiz's claim against Tanner.[46] In support of this position, Tanner asserts that "plaintiff's pleadings and testimony are silent on the alleged 'personal involvement' of the Warden in the use of force, purported denial of medical treatment, or generalized allegations of racism."[47]

### 2. Defendants' Argument That EMT Forbes Is Entitled to Qualified Immunity

Forbes claims that Zantiz is suing him "because he performed a post-use of force examination but allegedly provided him no treatment for various alleged injuries,"[48] in violation of the Eighth Amendment.[49] Citing the Fifth Circuit's decision in *Brewster v. Detke*,[50] Forbes states that a violation of the Eighth Amendment occurs when prison officials "demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction

---

[44]  *Id.* (quoting *Pearson*, 555 U.S. at 232).

[45]  *Id.* at p. 6.

[46]  *Id.*

[47]  *Id.*

[48]  *Id.* at p. 7.

[49]  *Id.*

[50]  587 F.3d 764 (5th Cir. 2009).

of pain."[51] Forbes contends that the Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."[52] According to Forbes, "although the plaintiff delineated injuries [in his complaint], he did not seek treatment for any of them and, thus, there is no allegation that any of the alleged injuries was [sic.] serious."[53] Furthermore, Forbes asserts that Zantiz must prove that the defendant had "the subjective intent to cause harm."[54] Forbes avers that Zantiz's allegations are not sufficient to show "deliberate indifference":

> The plaintiff testified at the *Spears* hearing that Bruce Forbes conducted a post-use of force examination. He further testified that Bruce Forbes referred him to see the doctor but, because he did not get an appointment, he sued the whole 'medical department.' Forbes recommended the plaintiff get some rest. Plaintiff may have disagreed with that course of action but, he never sought any further care."[55]

### 2. Plaintiff's Argument in Opposition

In opposition, Zantiz characterizes Defendants' motion as "no more than a legal tactic to help the Defendants to cover up the truth about their actions and escape the Reprecussions about the deliberate indifference they intentionally and maliciously subjected me to, because of the color of my skin and this Complaint where officers put a noose around my neck threatening to hang me."[56]

### 1. Opposition to Defendants' Argument That EMT Forbes Is Entitled to Qualified Immunity

Responding to the argument that Forbes is entitled to qualified immunity, Zantiz asserts:

---

[51] *Id.* (quoting *Brewster*, 587 F.3d at 769).

[52] *Id.* at p. 8 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).

[53] *Id.* at p. 9.

[54] *Id.* at p. 9 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003)).

[55] *Id.* at p. 9-10.

[56] Rec. Doc. 64 at p. 1.

8

"Bruce Forbes is Deliberately Indifferent, Because he intentionally denied, delayed, and intentionally interferred with me getting treatment or to be seen by Dr. McVea."[57] He further contends that "Bruce Forbes knew of my serious injuries and completely disregarded it [sic.]"[58] According to Zantiz, "when he told me to lay down for a couple of days and when I asked EMT Forbes if he was now deliberately denying me medical treatment, Bruce Forbes addmitted [sic.] (yes) that he was and said, 'what can you do about it.'"[59] Referring to his alleged injuries, Zantiz contends "my fractured rib, busted ear drum which was still bleeding and the few other injuries would easily be recognized even to a lay person."[60] Zantiz further avers that "Bruce Forbes knew I needed a Doctor's help but disregarded it on purpose"[61] and that "Bruce Forbes called me a nigger when I asked to see the Doctor."[62]

   *2. Opposition to Defendants' Argument That Warden Robert Tanner Is Entitled to Qualified Immunity*

   With respect to Tanner, Zantiz maintains that "Warden Robert Tanner is another part of this racial gambit and he should not be entitled to Qualified Immunity or be released from this Complaint."[63] According to Zantiz, "Due to an institutional policy, Federal/State Regulations, and Procedures, and the Department of the Public Safety and Corrections directives, states [sic.] Robert

---

[57] *Id.* at p. 3.

[58] *Id.* at p. 5.

[59] *Id.* at p. 5.

[60] *Id.*

[61] *Id.*

[62] *Id.* at pp. 5-7.

[63] *Id.* at p. 11.

Tanner is fully responsible when the state takes a person into custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being." Furthermore, Zantiz contends that Tanner failed to supervise prison personnel:

> During the investigation, evidence was collected and Warden Tanner was informed of the events within my complaint and the serious injuries I sustained (received) clearly demonstrating that he is aware and has knowledge of the constitutional violations of my rights by several subordinates under his charge but failed to correct the violations in the course of his supervisory responsibilities.[64]

Zantiz also asserts that Tanner denied his internal complaint following the December 31, 2011 incident, "demonstrating . . . deliberate indifference when he failed to respond to my request for help."[65] More generally, Zantiz avers that Tanner is aware of discriminatory racial dynamics at Rayburn:

> There's a ranking disparity here at RCC [Rayburn Correctional Center] in the upper ranking levels that would clearly demonstrate racial discrimination that is egregiously devised by Warden Tanner to keep African-Americans from higher authoritative positions. His Administration consists of (6) six wardens, (3) three wardens are homosexual, All of them are white and racist. There's nobody Afircan American in the upper ranking levels that has authority or decision making power within the institution. RCC has only (2) African American captains and (1) African American Executive Administrator who's [sic.] duties are delegated to the office only. No control over decision powers of the governing inmate population. So, no one can't be so naieve [sic.] to think or believe that Warden Tanner doesn't know about all of these constitutional violations by his subordinates or himself.[66]

### III. Law and Analysis

#### A. Standard Applicable to Pro Se Filings

In addition to the applicable standard on a motion to dismiss, the Court is also cognizant that Plaintiff is proceeding *pro se*, and is therefore entitled to certain limited considerations. *Pro se*

---

[64] *Id.* at p. 13.

[65] *Id.* at p. 15.

[66] *Id.* at p. 17.

plaintiffs often lack the legal training helpful in interpreting and applying the substantive and procedural requirements of the legal system. Therefore, the Fifth Circuit has held that "[w]e give *pro se* briefs a liberal construction."[67] This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing."[68] Moreover, even with liberal construction, "mere conclusory allegations on a critical issue are insufficient."[69] *Pro se* plaintiffs are otherwise required to know their legal rights and abide by all applicable procedural rules,[70] and a *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve him of this duty.[71]

### B. Standard on a Motion to Dismiss

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure to state a claim upon which relief can be granted."[72] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[73] "Factual allegations must be enough to raise a right to relief above the speculative level,"[74] and a claim is facially plausible when the plaintiff has pled facts that allow the court to

---

[67] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

[68] *Jones v. Alfred*, 353 F. App'x 949 (5th Cir. 2009).

[69] *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

[70] *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 809 (S.D. Miss. 2006) (citing *Boswell v. Gov. of Texas*, 138 F.Supp.2d 782, 785 (N.D. Tex. 2000)).

[71] *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

[72] Fed. R. Civ. P. 12(b)(6).

[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[74] *Twombly*, 550 U.S. at 556.

"draw a reasonable inference that the defendant is liable for the misconduct alleged."[75] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[76]

In this case, Defendants Tanner and Forbes have asserted a qualified immunity defense. In reviewing the claims against Defendants, this Court is guided by both the ordinary pleading standard and by a heightened one.[77] In *Schultea v. Wood*, the Fifth Circuit explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply after evaluating the complaint under the ordinary pleading standard.[78] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[79] "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury."[80] In considering a motion to dismiss, the Court must consider the complaint and the *Schultea* reply as well as any testimony provided during the *Spears* hearing.[81]

To plead a Section 1983 claim, Zantiz is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the

---

[75]  *Id.* at 570.

[76]  *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

[77]  *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc).

[78]  *Id.*

[79]  *Id.* at 1433.

[80]  *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

[81]  *Eason v. Holt*, 73 F.3d 600 (1996) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), "the *Spears* hearing testimony, modifying the complaint, bears on the evaluation of the legal sufficiency of the claim").

—

color of state law while doing so.[82]

## C. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[83] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[84] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[85] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[86]

In *Saucier v. Katz*,[87] the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity. Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[88] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[89] The Court does not have to address these two questions sequentially; it

---

[82] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).

[83] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[84] *Pearson*, 555 U.S. at 237.

[85] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[86] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[87] *Saucier v. Katz*, 533 U.S. 194 (2001).

[88] *Id.* at 201.

[89] *Id.* at 202.

can proceed with either inquiry first.[90]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[91] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[92]

### D. Plaintiff's claim against EMT Forbes

The Court now turns to whether Forbes has qualified immunity to Zantiz's claim that he failed to provide adequate medical care. In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the necessary and wanton infliction of pain, proscribed by the Eighth Amendment."[93] Forbes does not contest that this is a clearly established constitutional right.[94] The key dispute is whether Zantiz has alleged facts, focusing specifically on Forbes, that if true would constitute a violation of this right. To prevail, Zantiz must show (1) the existence of a serious medical need, and (2) deliberate indifference on the

---

[90] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

[91] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[92] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

[93] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[94] Rec. Doc. 62-1 at p. 7 ("The legal standard for such a purported Eighth Amendment claim is well-established.").

part of Forbes.[95]

The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."[96] Here, Zantiz alleges that as a result of the incident on December 31, 2011, he suffered a bloody ear, a potentially broken rib, a knot in his eye, back problems, and neck pain.[97] During the *Spears* hearing, Zantiz explained that his ribs stopped hurting around April 2012, but that his tailbone, back, and neck still hurt. Furthermore, he claimed that his ear still "pusses from time to time."[98]

In his brief, Forbes admits that Zantiz's alleged injuries "taken in isolation" would constitute a serious medical need.[99] But Forbes argues that "[t]he admitted fact that the plaintiff did not request medical treatment in the days or months after the incident indicates one of two things, either he lied about suffering the injuries or exaggerated their severity."[100] Forbes's argument ignores Zantiz's allegations that he tried to obtain medical treatment during the initial evaluation and that he followed up with prison staff after the evaluation. According to Zantiz, during the medical examination on December 31, 2011, Forbes told him that he was "not going to get any treatment now."[101] Zantiz

---

[95] *See Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) ("Prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain.").

[96] *Gorbert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

[97] *Spears* Hearing, Tr. at 15:4–15.

[98] *Spears* Hearing, Tr. at 22:7–9.

[99] Rec. Doc. 62-1 at p. 8.

[100] *Id.* at pp. 8-9.

[101] *Spears* Hearing, Tr. at 21:18–21.

asserts that following this exam, he complained to prison staff on "three different shifts" about his symptoms. However, he claims that the staff did not treat him, instead informing Zantiz that "he was already treated by the EMT [Forbes]."[102] At the *Spears* hearing, Zantiz admitted that he had "not gone back to medical" since the initial evaluation. But he explained that "the only reason" why he had not returned was "because medical had a chance to correct the situation but they have not done anything to correct the situation at all."[103] Therefore, the Court finds that Zantiz has sufficiently alleged the existence of a serious medical need.

As explained above, in addition to alleging the existence of a serious medical need, Zantiz must also allege "deliberate indifference" of the part of Forbes. In *Brewster v. Dretke*, the Fifth Circuit explained what constitutes deliberate indifference:

> Deliberate indifference is an extremely high standard to meet. A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Such a showing requires the inmate to allege that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[104]

Zantiz alleges that Forbes, a licensed EMT, observed his injuries and commented that Zantiz probably had a broken rib. Zantiz further claims that when he told Forbes that he wanted to see a doctor, Forbes responded "No you don't. Your black ass shouldn't have pissed Lt. Seal off. You're a bitch ass crybaby and niggers like you are always crying when they jump on you."[105] Under

---

[102]   *Spears* Hearing, Tr. at 19:24–20:1.

[103]   *Spears* Hearing, Tr. at 22:16–19.

[104]   *Brewster*, 587 F.3d at 770 (5th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[105]   *Id.*

*Brewster*, a prison official shows deliberate indifference when he ignores or refuses to treat a prisoner when a serious risk of harm exists; thus, the Court finds that Zantiz has sufficiently alleged deliberate indifference.

Applying *Saucier v. Katz*, the Court finds that Zantiz has alleged facts that, taken in the light most favorable to the party asserting the injury,[106] show Forbes's conduct violated Zantiz's constitutional rights under the Eighth Amendment. Further, as Forbes even acknowledges,[107] this constitutional right to adequate medical care is clearly established. Therefore, Forbes is not entitled to qualified immunity.

### E. Plaintiff's claims against Warden Tanner

The Court now turns to whether Defendant Tanner has qualified immunity to Zantiz's claims that Warden Tanner should be held liable for his failure to adequately investigate and provide a remedy for the events of December 31, 2011, as well as for his role as "overseer of the whole institution."

With respect to Zantiz's claim that Tanner failed to adequately investigate and provide a remedy, the Fifth Circuit has held that prisoners have no liberty interest in having grievances resolved to their satisfaction.[108] Thus, Zantiz fails to allege a violation of a constitutional right, as required by *Saucier*.

Considering Zantiz's claim that Tanner should be liable as "overseer of the whole

---

[106]  *Saucier*, 533 U.S. at 201.

[107]  Rec. Doc. 62-1 at p. 7 ("The legal standard for such a purported Eighth Amendment claim is well-established.").

[108]  *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Covarrubias v. Wallace*, 907 F. Supp. 808, 283 (E.D. Tex. 2012) (characterizing *Geiger* as holding that "inmates do not have a constitutionally protect liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so").

institution," Tanner's assertion "no person may be held vicariously liable for acts of subordinates under § 1983"[109]oversimplifies the law. It is correct that a supervisor cannot be held liable under a theory of vicarious liability.[110] However, a supervisory official may be held liable for his failure to supervise or train his subordinates.[111] To prevail on a failure-to-supervise claim, Plaintiff must show: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[112] For the purposes of a failure-to-supervise claim, deliberate indifference requires that the supervisor have "'actual or constructive notice' 'that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'"[113]

Zantiz alleges that Tanner "in his official supervisory compassity [sic.] has deliberately and intentionally ignored all information regarding or about a constitutional wrongdoing that has been going on for some time throughout RCC [Rayburn]."[114] Furthermore, in his *Schultea* reply, Zantiz avers that "there's a long history here at RCC of white officers who proudly boast of being knights of the Ku Klux Klan (anti-communist Christian association) or is [sic.] affliated with family who are active members of hanging, beating, abusing, threatening, and punishing African-Americans,

---

[109] Rec. Doc. 62-1.

[110] *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

[111] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

[112] *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

[113] *Id.* at 447 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

[114] Rec. Doc. 64 at p. 19.

Mexicans, Latinos, etc . . . to no avail for years."[115] Moreover, Zantiz contends that if discovery is allowed to go forward that "more than enough write-ups, A.R.P.'s. and court cases lodged against them for excessive use of force, racism, assults [sic.], abuse and punishment on (me) inmates and staff demonstrating a intentional, deliberate and willful pattern to further harm, disrespect, degrade, and punish me or other people of color, whether they are employees or inmates."[116]

Even liberally construing Zantiz's *pro se* pleadings, the Court finds that he has not stated a plausible claim against Tanner for his failure to supervise the correctional staff. Although Zantiz suggests that there is endemic racism at Rayburn, he does not allege any specific incidents prior to the events of December 31, 2011. In this manner, Zantiz fails to allege facts that would show that Warden Tanner was on notice that Rayburn's training programs and supervisory mechanisms were inadequate in preventing constitutional violations. Because Plaintiff Zantiz has not carried his burden of showing that Defendant Tanner is not entitled to qualified immunity, the pending motion to dismiss is granted with respect to Zantiz's claim that Tanner failed to supervise.

## IV. Conclusion

Zantiz has alleged facts that show Defendant Forbes's conducted violated his clearly established constitutional right to adequate medical care under the Eighth Amendment. Therefore, Forbes is not entitled to qualified immunity.

---

[115] Rec. Doc. 56 at p. 3.

[116] *Id.* at p. 4.

Zantiz has not alleged facts sufficient to show that Defendant Tanner is not entitled to qualified immunity with respect to his failure-to-investigate claim. Furthermore, Zantiz has not alleged facts sufficient to show that Tanner is not entitled to qualified immunity with respect to his failure-to-supervise claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's Eighth Amendment claim against Defendant Forbes;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **GRANTED** with respect to Defendant Tanner in that Defendant Tanner is entitled to qualified immunity regarding Plaintiff's failure-to-investigate claim and failure-to-supervise claim; these claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 26th day of December, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**