# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JORDAN DARRELL ZANTIZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1580** |
| **RONNIE SEAL, et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Plaintiff Jordan Darrell Zantiz ("Zantiz") was formerly a prisoner incarcerated in Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.[1] On July 2, 2012, Zantiz filed the complaint in this matter, asserting claims pursuant to 42 U.S.C. § 1983 against several Rayburn employees.[2] Zantiz seeks relief from an alleged incident where he was beaten while handcuffed.[3] Zantiz also claims that the facility and its employees failed to protect him from the use of force and that he was provided with inadequate medical care for his injuries.[4]

Before the Court is Defendants Captain Lester Mitchell's, Major Craig Kennedy's, Sergeant Master Rhonda Distefano's, and Captain Frank Cleland's Motion for Summary Judgment.[5] For the reasons that follow Defendants' motion is **DENIED**.

## I. Background

### A. Factual Background

The plaintiff in this case is Jordan Darrell Zantiz, formerly a prisoner incarcerated at

---

[1] Rec. Doc. 1 at p. 3. Zantiz was released from prison on October 25, 2013. Rec. Doc. 120 at p. 1.

[2] *Id.*

[3] *Id.* at 17.

[4] *Id.* at 17.

[5] Rec. Doc. 73.

Rayburn. Defendants are correctional officers and healthcare providers at Rayburn. There is a total of ten defendants: Captain Ronnie Seal, Sergeant EMT Bruce Forbes, Sergeant Heather Warner, Warden Robert Tanner, Sergeant Master Carla Tullos, Lieutenant Wade Rigdon, Captain Lester Mitchell, Major Craig Kennedy, Captain Food Service/Security Frank Cleland, and Sergeant Master Rhonda Distefano.

Zantiz alleges that on December 31, 2011, he was called into the dining hall at Rayburn to speak with Captain Lester Mitchell, regarding an incident between Zanitz and a sergeant at Rayburn.[6] When Zantiz informed Mitchell that he did not know about the incident, Mitchell allegedly responded "that he was going to lock [Zantiz] up pending investigation."[7] According to Zantiz, Captain Ronnie Seal then handcuffed Zantiz behind his back, and "punched [Zantiz] on [his] left ear and twisted the cuffs and grabbed [Zantiz's] shirt collar."[8] Zantiz claims that Mitchell "ignored the situation altogether."[9] Zantiz also contends that Major Craig Kennedy,[10] Captain Frank Cleland,[11] and  Sergeant Master Rhonda Distefano[12] witnessed this incident in the dining hall. After handcuffing Zantiz, Seal allegedly began pushing him out of the dining hall and into the yard while yelling "racial things."[13]

---

[6]  Rec. Doc. 1 at p. 17.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.* at pp. 17-18.

[10]  Hearing before Magistrate Judge Joseph C. Wilkinson, Jr., Sept. 4, 2012 (hereinafter "*Spears* Hearing"), Tr. at 18:7–20.

[11]  *Id.* at 18:21–19:5.

[12]  *Id.* at 16:17–21.

[13]  Rec. Doc. 1 at p. 18.

Zantiz and Seal left the dining hall and moved toward the yard.[14] Zantiz claims that Seal hit him a second time and repeatedly called him a "dumb nigger."[15] Then, according to Zantiz, Seal "jerked" Zantiz's collar and starting yelling "about how he hates smart-ass niggers."[16] Zantiz asserts that following these comments, he was forced to the ground and beaten:

> Lt. Seal forced me to the ground and began kneeing me in the back, and side areas (left) repeatedly. Moments later my legs were crossed and someone began stomping on my back, butt, and leg. When I looked back Lt. Rigon [Defendant Wade Rigdon] was twisting/pulling my feet cross each other, and Lt. Seal continued kicking and stomping me. Lt. Seal then began lifting my arms up and kneed me in the back once again.[17]

Following this alleged beating, Zantiz states that Seal choked him and yelled that "niggers don't run shit around here."[18] According to Zantiz, Seal went on to say that "Klans have been hanging niggers around here for years."[19] Next, Zantiz alleges that "Department officials put a noose around my neck and threatened to hang me if I don't mind my own business."[20]

According to Zantiz, Sergeant Master Carla Tullos[21] and Sergeant Heather Warner[22] witnessed these events, which took place in the yard.

Once Zantiz was secured on his unit, he was visited by Sergeant EMT Bruce Forbes and

---

[14] *Spears* Hearing, Tr. at 10:22-12:20.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Spears* Hearing, Tr. at 12:21–13:1.

[22] *Id.* at 17:14–18:6.

Seal.[23] Zantiz recounts that Forbes stated that Zantiz probably had a broken rib but commented that "[his] wrist, ankles, back, and everything else would heal up in a few weeks."[24] When Zantiz said that he wanted to see a doctor, Forbes allegedly responded "No you don't. Your black ass shouldn't have pissed Lt. Seal off. You're a bitch ass crybaby and niggers like you are always crying when they jump on you."[25]

Zantiz alleges that after the events of December 31, 2011, Rayburn officials "conspired" to prevent him from pursuing a complaint.[26] He further avers that "the Department is Bias [sic.] and Partial, egregiously devised to deprive me of all fundamental fairness and an opportunity to seek Justice in holding Lt. Seal, Lt. Rigdon etc. accountable for their crimes against me . . . and even to have them charged and punished."[27]

Defendants deny Plaintiff's alleged version of events. According to Defendants, on December 31, 2011, "[m]inimal force was used to restore discipline"[28] and "plaintiff suffered no physical injury."[29]

### B. Procedural Background

Plaintiff Zantiz, proceeding pro se, filed the complaint in this matter on July 2, 2012,

---

[23] Rec. Doc. 1 at p. 18.

[24] *Id.*

[25] *Id.*

[26] *Id.* at p. 19.

[27] *Id.*

[28] Rec. Doc. 36 at p. 10.

[29] *Id.*

asserting that Defendants violated his constitutional rights.[30] On September 4, 2012, the Magistrate Judge conducted a hearing pursuant to *Spear v. McCotter*,[31] in order to have "the prisoner state with more definiteness the form and substance of his claim" prior to the service of process on the defendants.[32] During the *Spears* hearing, the Magistrate Judge questioned Zantiz and determined that Zantiz's claims against the ten defendants are as follows:

- Captain Ronnie Seal: excessive force

- Lieutenant Wade Rigdon: excessive force

- Sergeant EMT Bruce Forbes: inadequate medical attention

- Sergeant Heather Warner: failure to protect

- Sergeant Master Carla Tullos: failure to protect

- Captain Lester Mitchell: failure to protect

- Major Craig Kennedy: failure to protect

- Captain Food Service/Security Frank Cleland: failure to protect

- Sergeant Master Rhonda Distefano: failure to protect

- Warden Robert Tanner: liability as "overseer of the whole institution" and failure to adequately investigate.[33]

Defendants filed an answer on October 16, 2012, denying the allegations and raising the defense of qualified immunity.[34] On January 1, 2013, Defendants filed a motion for a *Schultea*

---

[30]  Rec. Doc. 1.

[31]  766 F.2d 179 (5th Cir. 1985).

[32]  *Id.* at 181. A minute entry from the *Spears* hearing is available at Rec. Doc. 30.

[33]  *Spears* Hearing, Tr. at 25:3–27:16.

[34]  Rec. Doc. 36.

Reply,[35] which Plaintiff provided on February 6.[36] Defendants Mitchell, Kennedy, Distefano, and Cleland filed the pending "Motion for Summary Judgment" on May 28, 2013.[37] Plaintiff filed memoranda in opposition on June 4, 2013,[38] June 6, 2013,[39] and June 12, 2013.[40] With leave of the Court, Defendants filed a reply in support of their motion on June 13, 2013.[41]

## II. Parties' Arguments

### A. Defendants' arguments in support

According to Defendants, Plaintiff alleges that Mitchell, Kennedy, Distefano, and Cleland "witnessed the alleged use of force and failed to intervene to protect him in violation of the Eighth Amendment."[42] Defendants argue that summary judgment on this claim is appropriate because they are entitled to qualified immunity:

> No genuine issue of material fact exists for trial regarding the alleged use of force in the dining hall because the video recording shows <u>no force</u> was used and, thus, no defendant violated the Constitution by failing to protect the plaintiff. The movants are entitled to qualified immunity [from] this, the only claim against each of them.[43]

To determine whether qualified immunity bars suit, Defendants contend that the Supreme

---

[35] Rec. Doc. 49.

[36] Rec. Doc. 56.

[37] Rec. Doc. 73.

[38] Rec. Doc. 75.

[39] Rec. Doc. 77; Rec. Doc. 78.

[40] Rec. Doc. 81.

[41] Rec. Doc. 85.

[42] Rec. Doc. 73.

[43] Rec. Doc. 73-2 at p. 4.

Court mandates a two-prong inquiry.[44] First, the court must decide whether the facts alleged "make out a violation of a constitutional right."[45] Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct."[46]

Defendants acknowledge that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[47] Quoting *Taylor v. City of Shreveport*, Defendants aver that "[a] critical inquiry in a failure to intervene claim is whether the officer 'had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it.'"[48]

Defendants assert that in this case Seal did not use excessive force in their presence, and thus they have not violated Zantiz's constitutional rights by failing to intervene. In support of their assertion, Defendants submit a videotape purporting to show Seal's handcuffing of Zantiz in the dining hall.[49] According to Defendants, the video footage shows that:

> Captain Seal did not punch the plaintiff in the head. The plaintiff did not try to speak with Captain Mitchell after he was handcuffed. Captain Seal did not twist the handcuffs once applied. Captain Seal did not pull plaintiff's shirt collar. Captain Seal did not jerk the plaintiff toward the door. Captain Seal did not forcefully drag the plaintiff toward the door. Captain Seal only applied handcuffs to the plaintiff. He did not use force.[50]

Alternatively, Defendants maintain that even putting aside the video footage and accepting

---

[44] *Id.* at p. 6 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[45] *Id.* (quoting *Peason*, 555 U.S. at 232).

[46] *Id.* (quoting *Pearson*, 555 U.S. at 232).

[47] *Id.* (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

[48] *Id.* (quoting *Taylor v. City of Shreveport*, No. 07-1817, 2009 WL 2762710, at *3 (W.D. La. Aug. 27, 2009) (quoting *Hale*, 45 F.3d at 919)).

[49] *See* Rec. Entry 74.

[50] Rec. Doc. 73-2 at p. 5.

Plaintiff's allegations, it would be "unreasonable and illogical to conclude that anyone could have intervened to prevent such 'force.'"[51] Because a failure to intervene claim requires that the officer had an opportunity to realize the excessive nature of the force as well as an opportunity to intervene, "[i]t is impossible, or at least illogical, to conclude that each movant saw the alleged rapid and isolated punch, pull, drag, or tug, had time to recognize the excessive nature of these quick actions, and had a reasonable opportunity to intervene to stop the use of excessive force."[52]

### B. Plaintiff's Argument in Opposition

In opposition, Plaintiff asserts that he "has not obtained the necessary information from the Discovery to challenge and rebut the Defendants [sic.] claim."[53] According to Plaintiff, "[t]he defendants heard and observed Capt. Seal punch me (strike me) in the dining hall and they were also aware of the excessive use of force on the Petitioner when there was no need for force to be used, where a 'noose' was put around my neck and I was severely beaten in handcuffs."[54] Plaintiff acknowledges that "[t]he defendants claim that they are entitled to Qualified Immunity from any allegation that they failed to protect the Petitioner from any force, because the video recording from the dining hall at 4 pm on December 31, 2011 shows that no force was used by Capt. Seal in the dining hall."[55] However, Plaintiff avers that "[t]here is clearly a genuine issue of fact."[56]

---

[51] *Id.* at p. 7.

[52] *Id.* at pp. 7-8.

[53] Rec. Doc. 75 at p. 1.

[54] Rec. Doc. 77 at p. 3.

[55] Rec. Doc. 81 at p. 3.

[56] Rec. Doc. 81 at p. 3.

### C. Defendant's reply in support

In their reply to Plaintiff's memoranda of opposition, Defendants reiterate that "[t]he basis of the defendants' motion is the undisputed fact that Capt. Ronnie Seal did not punch the plaintiff in the dining hall as the plaintiff claimed,"[57] and that "[t]he motion is based on a video recording of the exact date and time the plaintiff claims Capt. Seal punch him."[58]

Defendants also suggest that the Court may decide to treat "Plaintiff's Motion to Dismiss Defendant's Motion for Summary Judgment"[59] as a motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.[60] However, they aver that Plaintiff's motion is too broad to satisfy Rule 56(f) requirements in that it "requests all discovery (except his medical records) without specifying what specific material facts *from defendants' motion for summary judgment* the information will genuinely dispute."[61]

Finally, Defendants point to the exhibits Plaintiff filed in connection with his fourth memorandum in opposition. According to Defendants, these exhibits are prison disciplinary records that only prove "the actual date of the incident," December 31, 2011, and that Plaintiff "was convicted on that date of various disciplinary offenses directly related to the claims against the defendants."[62]

---

[57] Rec. Doc. 85 at p. 3.

[58] *Id.*

[59] Rec. Doc. 75.

[60] Rec. Doc. 85 at p.3.

[61] *Id.* at p. 4.

[62] *Id.* at p. 5.

## III. Law and Analysis

### A. Standard Applicable to Pro Se Filings

In addition to the applicable standard on a motion for summary judgment, the Court is also cognizant that Plaintiff is proceeding *pro se*, and is therefore entitled to certain limited considerations. *Pro se* plaintiffs often lack the legal training helpful in interpreting and applying the substantive and procedural requirements of the legal system. Therefore, the Fifth Circuit has held that "[w]e give *pro se* briefs a liberal construction."[63] This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing."[64] Moreover, even with liberal construction, "mere conclusory allegations on a critical issue are insufficient."[65] *Pro se* plaintiffs are otherwise required to know their legal rights and abide by all applicable procedural rules,[66] and a *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve him of this duty.[67]

### B. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[68] When assessing whether a dispute as to any material fact exists, the court

---

[63]   *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

[64]   *Jones v. Alfred*, 353 F. App'x 949 (5th Cir. 2009).

[65]   *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

[66]   *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 809 (S.D. Miss. 2006) (citing *Boswell v. Gov. of Texas*, 138 F.Supp.2d 782, 785 (N.D. Tex. 2000)).

[67]   *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

[68]   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[69] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[70] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[71]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[72] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[73] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.

### C. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[74] Qualified immunity is an "immunity from suit

---

[69] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[70] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[71] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[72] *Celotex*, 477 U.S. at 323.

[73] *Id.* at 1265.

[74] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

rather than a mere defense to liability."[75] In this manner,"[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[76] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[77]

In *Saucier v. Katz*,[78] the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity. Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[79] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[80] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[81]

In the context of a motion for summary judgment, the Court still "construe[s] all of the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party."[82] The Fifth Circuit has instructed that if the applicability of qualified immunity "depend[s] on the outcome of genuine issues of material fact . . . summary judgment on this issue is not proper."[83]

---

[75]  *Pearson*, 555 U.S. at 237.

[76]  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[77]  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[78]  *Saucier v. Katz*, 533 U.S. 194 (2001).

[79]  *Id.* at 201.

[80]  *Id.* at 202.

[81]  *See Pearson* 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

[82]  *Mosley v. White*, 464 F. App'x 206, 210 (5th Cir. 2010).

[83]  *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991).

### D. Failure to Intervene

The pending motion for summary judgment is brought by Defendants Mitchell, Kennedy, Distefano, and Cleland.[84] With respect to these Defendants, Plaintiff claims that they witnessed the alleged assault by Defendant Seal in the dining hall and failed to intervene.[85]

In *Hale v. Townley*, the Fifth Circuit recognized that "an officer who is present at the scene [where excessive force is used] and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."[86] A critical inquiry in determining so-called bystander liability is "whether [the defendant] had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[87]

In order for bystander liability to exist, there must be an underlying use of excessive force.[88] To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that "force was not 'applied in a good-fath effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm' and that he suffered an injury."[89] This standard involves both a subjective and an objective component. The subjective component requires the plaintiff to "establish that the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'"[90] Factors bearing on this determination are: "the need for the application of force; the relationship between the need and the amount of force used; the threat reasonably perceived by the responsible officials;

---

[84] Rec. Doc. 73.

[85] *Spears* Hearing, Tr. at 16:17–21, 18:7–19:5.

[86] *Hale v. Townley*, 45 F.3d 914, 919 (1995).

[87] *Id.*

[88] *See Elliot v. Linnell*, 269 F. App'x 450, 451 (5th Cir. 2008) (explaining that a bystander officer would only be liable if another officer used excessive force).

[89] *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

[90] *Mosley*, 464 F. App'x at 211 (quoting *Hudson*, 503 U.S. at 8).

and any efforts made to temper the severity of a forceful response."[91] To satisfy the objective component, the plaintiff must establish he "suffered by the excessive force more than *de minimis* physical injury."[92] However, there is no requirement that the injury be "'significant, serious, or more than minor.'"[93]

### E. Plaintiff's claims against Defendants Mitchell, Kennedy, Distefano, and Cleland

Defendants Mitchell, Kennedy, Distefano, and Cleland have asserted that they are entitled to qualified immunity.[94] On a motion for summary judgment where defendants have invoked qualified immunity, plaintiff must show the existence of a genuine dispute as to a material fact. However, the Court still "construe[s] all of the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party,"[95] or the Plaintiff in this case.

In this case, Defendants do not contest that an officer's failure to protect a suspect from another officer's use of excessive force may violate a clearly established constitutional right.[96] Rather, Defendants argue that Seal did not use excessive force in the dining hall, or alternatively, that if Seal did use excessive force, Defendants did not have a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it. According to Defendants, the video recording of the incident in the dining hall "shows no force was used."[97] The video submitted by

---

[91] *Id.*, 212. (citing *Hudson*, 503 U.S. at 6).

[92] *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *see also Mosley*, 464 F'Appx at 212 (quoting *Gomez*).

[93] *Gomez*, 163 F.3d at 924.; *see also Mosley*, 464 F'Appx at 212 (quoting *Gomez*).

[94] Rec. Doc. 73.

[95] *Mosley v. White*, 464 F. App'x 206, 210 (5th Cir. 2010).

[96] *See* Rec. Doc. 73-1 at p. 7 (acknowledging case law establishing that "an officer who is present at the scene and does not take reasonable measure to protect a suspect from another officer's use of excessive force may be liable under section 1983).

[97] Rec. Doc. 73 at p. 4; *see also* Rec. Doc. 85 at p. 3 ("The basis of the defendants' motion is the undisputed fact that Capt. Ronnie Seal did not punch the plaintiff in the dining hall as the plaintiff claimed. The motion is based on a video recording of the exact date and time the plaintiff claims Capt. Seal punched him (immediately after Seal placed

Defendants, however, shows only approximately nine seconds of footage involving Zantiz and Seal; at 4:28 Seal appears on camera to handcuff Zantiz, and at 4:37 Seal and Zantiz walk off camera.[98] Defendants aver that Plaintiff's opposition to their motion for summary judgment "contain no evidence" to refute the video.[99] However, at the *Spears* hearing, Plaintiff testified that as he and Seal left the kitchen, Seal punched his ear, twisted the handcuffs, and jerked him by the shirt collar.[100] The video submitted by Defendants shows too short a time frame to conclusively refute Plaintiff's testimony.

The Court further notes that Defendant's Motion for Summary Judgment was filed on May 28, 2013.[101] Plaintiff's memoranda in opposition were filed on June 4,[102] June 6,[103] and June 12, 2013.[104] On June 6, the Magistrate Judge granted in part Plaintiff's "Refiled Motion for an Order Compelling Discovery," in order to "allow plaintiff to pursue narrower discovery that may uncover the facts needed to address defendants' qualified immunity claim."[105] Plaintiff would not have had this discovery available to utilize in his opposition to Defendant's motion; thus, it appears that the evidence before the Court may be undeveloped.

There is a genuine dispute as to whether Defendant Seal, without provocation, punched Plaintiff's left ear, twisted the handcuffs, and jerked Plaintiff's collar, giving Plaintiff an ear that was

---

him in handcuffs).").

[98]  DVD, submitted as manual attachment at Rec. Doc.74.

[99]  Rec. Doc. 85 at p. 3.

[100]  *Spears* Hearing, Tr. at p. 10:15–11:24.

[101]  Rec. Doc. 73.

[102]  Rec. Doc. 75.

[103]  Rec. Doc. 77; Rec. Doc. 78.

[104]  Rec. Doc. 81.

[105]  Rec. Doc. 76 at p. 4.

still infected nearly nine months after the incident.[106] Such conduct would be "force [that] was not 'applied in a good-fath effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm"; such an injury would be more than *de minimis*. In turn, whether Defendant Seal used excessive force is material to whether Defendants Mitchell, Kennedy, Distefano, and Cleland failed to intervene. If Defendants Mitchell, Kennedy, Distefano, and Cleland did fail to intervene, then they are not entitled to qualified immunity.

Therefore, this Court finds that it would be premature to decide whether qualified immunity applies to Defendants here on summary judgment, considering the parties dispute the underlying facts that a decision on qualified immunity would require.

## IV. Conclusion

As issues of material fact are still in dispute, the Court cannot grant the pending motion for summary judgment. Furthermore, Defendants' invocation of qualified immunity cannot be resolved at this time because under Fifth Circuit precedent, certain disputed issues of fact must be decided before a ruling can be made. Therefore, the Court will determine the applicability of qualified immunity only after the necessary findings of fact have been made. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 26th day of December, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[106] *Spears* Hearing, Tr. at 22:7–9.

16